UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN R. UMBARGER,

                  Petitioner,                Case No. 1:12-cv-705

v.                                 Honorable Robert Holmes Bell

STATE OF MICHIGAN et al.,

                  Respondents.

_____/

## OPINION

        This is a habeas corpus action brought by Petitioner John R. Umbarger pursuant to 28 U.S.C. § 2241.[1]  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4, RULES GOVERNING § 2254 CASES; *see also* 28 U.S.C. § 2243 (directing courts to grant the writ or order the respondent to answer it "unless it appears from the application that the applicant or person detained is not entitled thereto").  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are

---

[1]Petitioner purports to bring a "Petition for Writ of Habeas Corpus," "as is his right" under the Michigan constitution, the United States Constitution, and the United Nations Universal Declaration of Human Rights ("UNUDHR"). (Pet., docket #1, Page ID#1.)  However, applications for the writ of habeas corpus in federal courts are governed by 28 U.S.C. § 2241, which authorizes the Court to grant the writ to persons "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2243(c)(3).  Neither the Michigan constitution nor the UNUDHR confer on this Court the power to grant a writ of habeas corpus.

palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After

undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed.

## Background

In 1996, Petitioner was convicted in Kent County Circuit Court of three counts of

first-degree criminal sexual conduct with a person under thirteen years of age, Mich. Comp. Laws

§ 750.520b(1)(a), and one count of second-degree criminal sexual conduct with a person under

thirteen years of age, Mich. Comp. Laws § 750.520c(1)(a), for acts committed in 1994.  He was

sentenced to concurrent prison terms for each count.  On April 20, 2010, he was released on parole,

and on April 23, 2012, he completed the terms of his sentence and parole and was discharged from

both.  He filed the instant petition in July 2012.

In 1995, before Petitioner's conviction, the State of Michigan enacted the Sex

Offenders Registration Act (SORA), Mich. Comp. Laws § 28.721 *et seq*.  Among other things, it

requires convicted sex offenders like Petitioner to register with the state and provide personal

information about themselves, some of which is then published on a publicly-available website.  *See*

Mich. Comp. Laws §§ 28.727, 28.728.  Amendments to SORA that became effective in 2006

prohibit Petitioner from working, residing, or loitering within 1,000 feet of school property.  *See*

Mich. Comp. Laws §§ 28.733-28.735. Additional amendments that became effective in 2011 require

Petitioner to report in person to his local law enforcement agency on a quarterly basis and

"immediately"[2] after he:  changes his name, residence, or place of employment; enrolls or

discontinues enrollment at an institution of higher education; establishes an e-mail or instant-

messaging address; purchases or begins to regularly operate a vehicle; or "intends to temporarily

---

[2]"Immediately" is defined in the statute as "within 3 business days."  Mich. Comp. Laws § 28.722(g).

reside" at any place other than residence for more than 7 days. *See* Mich. Comp. Laws § 28.725(1).

He must also report in person "immediately" before he moves to another state, and not later than 21

days before he moves or travels to another country for more than 7 days. *See* Mich. Comp. Laws

§ 28.725(6)-(7). Because of the nature of his convictions, Petitioner is classified as a "tier III"

offender;[3] as such, he is subject to SORA's registration requirements for life. Mich. Comp. Laws

§ 28.725(12). The penalty for failure to comply with SORA is a fine and/or imprisonment. *See*

Mich. Comp. Laws § 28.729.

In 2006, Congress enacted the Sex Offender Registration and Notification Act

(SORNA), 42 U.S.C. § 16901 *et seq.*, for the purpose of "creat[ing] a national system for the

registration of sex offenders." *United States v. Utesch*, 596 F.3d 302, 306 (6th Cir. 2010) (citing 42

U.S.C. § 16901). SORNA requires sex offenders to "register, and keep the registration current, in

each jurisdiction where the offender resides, where the offender is an employee, and where the

offender is a student." 42 U.S.C. § 16913(a). The registry includes the sex offender's name, Social

Security number, addresses where the offender works, resides or attends school, and the license plate

numbers and descriptions of any vehicles owned or operated by the offender. 42 U.S.C. § 16914.

Those required to register must appear in person to update their registration information "not later

than 3 business days after each change of name, residence, employment, or student status[.]" 42

U.S.C. § 16913(c). A "tier III" offender like Petitioner must verify his information in person at least

once every three months. 42 U.S.C. § 16916. SORNA's registration requirements apply to

---

[3]Petitioner's tier classification is noted in his profile on the Michigan Sex Offender Registry website, available at http://www.mipsor.state.mi.us/PSORSearchDetails.aspx?oid=8896925 (visited Jan. 24, 2013); *see also* Mich. Comp. Laws § 28.722(v)-(w) (defining a tier III offender as someone convicted of a violation of Mich. Comp. Laws § 750.520c against a person under 13 years of age).

Petitioner for the remainder his life.  42 U.S.C. § 16915(a)(3).  The penalty for being a sex offender who "travels in interstate or foreign commerce" and "knowingly" fails to comply with SORNA is a fine and/or imprisonment for up to 10 years.  18 U.S.C. § 2250(a).

SORA and SORNA are related to one another.  SORNA requires states that accept certain federal funds to maintain a sex offender registry conforming to its requirements.  *See* 42 U.S.C. §§ 16912, 16925.  SORNA provides a set of "minimum standards for sex offender registration and notification in the United States," though states are generally free to adopt additional regulations beyond those provided for in the Act.  The Nat'l Guidelines for Sex Offender Registration & Notification, 73 Fed. Reg. 38034, 38044 (July 2, 2008).  SORA, as amended in 2011, is part of Michigan's effort to comply with SORNA's minimum requirements.  *See* http://www.smart.gov/sorna.htm (visited January 24, 2013) (listing Michigan as a state that is in substantial compliance with SORNA).  Thus, generally speaking, both statutes contain similar registration and notification provisions for sex offenders, though SORA's may be more extensive.  One prominent feature of SORA that clearly distinguishes it from SORNA, however, is that SORA also limits where sex offenders may work or reside.  *See* Mich. Comp. Laws §§ 28.733-28.735.

Petitioner claims that SORA and SORNA are void or unconstitutional[4] as applied to him for the following reasons:

I.      . . . [SORA] DEPRIVES PETITIONER OF HIS RIGHTS TO FREEDOM OF ASSOCIATION, OF TRAVEL, OF LIBERTY, OF LOCOMOTION, AND TO BE LEFT ALONE . . . .

---

[4]Petitioner invokes the United States and the Michigan constitutions the source of his rights; however, federal habeas relief is available only for a violation of the "Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2241(c)(3).  Thus, it is not available for a violation of the Michigan constitution.  Petitioner also invokes the UNUDHR, but all of the rights identified by him are set forth in the Constitution.

II.      . . . SORA IS EX POST FACTO AND CONSTITUTES A BILL OF PAINS AND PENALTIES . . . .

III.     . . . [SORA] SUBJECT[S] [PETITIONER] TO SPECIFIC AND UNEQUAL SPECIALTY LAWS WITHOUT JUDICIAL PROCESS, . . . CONSTITUTING A DUE PROCESS OF LAW VIOLATION UNDER THE . . . [CONSTITUTION].

IV.     . . . SORA AND SORNA ARE VOID AND UNENFORCEABLE PURSUANT TO THE EQUAL PROTECTION OF THE LAW CLAUSE[] OF THE . . . [CONSTITUTION].

V.      42 USC § 1[6]913 WHICH PURPORTS TO GRANT THE AT[T]ORNEY GENERAL OF THE UNITED STATES OF AMERICA THE RIGHT TO DETERMINE RETROACTIVE APPLICATION OF SORNA, AND THEREBY OF SORA, IS UNCONSTITUTIONAL . . . .

VI.     THE FEDERAL GOVERNMENT LACKS JURISDICTION OVER STATE CRIMES AND CANNOT EXTORT THE STATE OF MICHIGAN TO ENACT LAWS ON ITS BEHALF.

(Pet., docket #1, Page ID##8, 10, 12-14.)

Petitioner elaborates on the foregoing claims in his petition.  In short, he contends that SORA violates his constitutional rights to freedom of association, travel, privacy, due process and equal protection, and that it constitutes an impermissible *ex post facto* law and a bill of attainder. He also contends that SORNA is an *ex post facto* law that violates his rights to due process and equal protection, and that:  exceeds the scope of Congress' power to regulate state activity, impermissibly coerces the State of Michigan to enact laws on behalf of the federal government, and impermissibly delegates authority to the Attorney General to determine its retroactive application.

The respondents named in this action are the State of Michigan (identified as the "Michigan Legislature") and the United States (identified as "The United States in Congress Assembled"). (*See* Pet., docket #1, Page ID#1.)  As relief, Petitioner seeks an order requiring the

State of Michigan and the United States Attorney General to release him from the requirements of

SORA and SORNA.

## Discussion

To obtain federal habeas corpus relief, Petitioner must demonstrate that he is "in

custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2241(c)(3).

The custody requirement is a jurisdictional one; if a petitioner is not "in custody" at the time that the

petition is filed, the Court lacks jurisdiction to consider it.  *Maleng v. Cook*, 490 U.S. 488, 490-91

(1989).  "The custody requirement of the habeas corpus statute is designed to preserve the writ of

habeas corpus as a remedy for severe restraints on individual liberty."  *Hensley v. Municipal Court*,

411 U.S. 345, 351 (1973).  Because habeas corpus is an "extraordinary remedy," its use "has been

limited to cases of special urgency, leaving more conventional remedies for cases in which the

restraints on liberty are neither severe nor immediate."  *Id.*

"[T]he use of habeas corpus has not been restricted to situations in which the

applicant is in *actual, physical* custody."  *Jones v. Cunningham*, 371 U.S. 236, 239 (1963) (emphasis

added).  In *Jones*, the Supreme Court extended the availability of the writ to a prisoner released on

parole, because his release was "conditioned on his reporting regularly to his parole officer,

remaining in a particular community, residence, and job, and refraining from certain activities."

*Maleng*, 490 U.S. at 491 (citing *Jones*, 371 U.S. at 242).  Similarly, in *Hensley*, the Supreme Court

held that a petitioner who had been released on his own recognizance pending the execution of his

sentence was "in custody" because he was "subject to restraints not shared by the public generally"

in that he had an "obligation to appear at all times and places as ordered by any court or magistrate

of competent jurisdiction" and his "freedom of movement rest[ed] in the hands of state judicial

officers, who may demand his presence at any time and without a moment's notice." *Hensley*, 411

U.S. at 351 (internal quotation marks and alterations omitted).  For similar reasons, habeas corpus

is also available to prisoners released on bail,[5] to aliens seeking entry into the United States,[6] and to

individuals challenging their induction into military service.[7]  In short, to satisfy the custody

requirement, a petitioner must establish that he is subject to "conditions which significantly confine

and restrain his freedom[.]"  *Jones*, 371 U.S. at 243.  However, "[c]ollateral consequences of a

conviction, such as the ability 'to vote, engage in certain businesses, hold public office, or serve as

a juror,' are . . . insufficient to satisfy the 'in custody' requirement for habeas jurisdiction."  *Leslie*

*v. Randle*, 296 F.3d 518, 522 (6th Cir. 2002) (quoting *Maleng*, 490 U.S. at 491-92).

   The custody requirement bars Petitioner from attacking his 1996 criminal judgment.

The Supreme Court has made clear that an individual cannot be "in custody pursuant to the judgment

of a State court" if the sentence imposed by that judgment has expired, even if the individual is

subject to significant collateral consequences as a result of that judgment.  *Maleng*, 490 U.S. at 491-

92.  Petitioner had already completed the sentence imposed by the 1996 judgment by the time that

he filed the instant action; thus, the Court lacks jurisdiction to consider any challenge to that

judgment.  *See id.*

   Petitioner, however, challenges restrictions imposed on him under SORNA and

SORA, some of which came into being several years after his criminal judgment was entered.

Petitioner names two respondents to his petition, one state and one federal.  Apparently, Petitioner

---

[5]*Lefkowitz v. Newsome*, 420 U.S. 283, 286 n.2, 291 & n.8 (1975).

[6]*Jones*, 371 U.S. at 240 n.9 (collecting cases).

[7]*Jones*, 371 U.S. at 240 n.11.

contends that the State of Michigan has "custody" over him through SORA, and the United States

has "custody" over him through SORNA.  The Court will address Petitioner's claims against each

Respondent in turn.

> I.      United States (SORNA)

No court, it appears, has considered whether SORNA renders an individual "in

custody" for the purposes of federal habeas corpus, but the federal courts of appeal that have

considered sex-offender registration and notification requirements in various state laws have

unanimously concluded that such requirements do not suffice.  *See, e.g., Wilson v. Flaherty*, 689

F.3d 332, 337-38 (4th Cir. 2012) (reviewing Texas and Virginia sex-offender registration statutes);

*Virsnieks v. Smith*, 521 F.3d 707, 718-20 (7th Cir. 2008) (Wisconsin statute); *Wilkins v. Madigan*,

250 F. App'x 747, 749  (7th Cir. 2007) (Illinois statute); *Leslie v. Randle*, 296 F.3d 518, 523 (6th

Cir. 2002) (Ohio sexual-predator statute); *Lewis v. Randle*, 36 F. App'x 779, 781 (6th Cir. 2002)

(Ohio sexual-predator designation);  *Erwin v. Edwards*, 22 F. App'x 579 (6th Cir. 2001) (same);

*McNab v. Kok*, 170 F.3d 1246, 1247 (9th Cir. 1999) (Oregon statute); *Henry v. Lungren*, 164 F.3d

1240, 1241-42 (9th Cir. 1999) (California statute); *Williamson v. Gregoire*, 151 F.3d 1180, 1184 (9th

Cir. 1998) (Washington statute).  Many federal district courts have reached the same conclusion for

other state statutes. *See, e.g., Burr v. Thaler*, No. 4:12–CV–605–Y, 2013 WL 67126 (N.D. Tex. Jan.

7, 2013) (adopting a report and recommendation regarding the South Carolina statute); *Hamilton v.

Delaware*, No. 12–1314–RGA, 2012 WL 6608507 (D. Del. Dec. 17, 2012) (Delaware statute);

*Evans v. Denmark*, No. 4:11CV57, 2012 WL 268783 (S.D. Miss. Jan. 13, 2012) (report and

recommendation regarding the Mississippi statute); *Ridley v. Hetzel*, No. 2:11cv377–TMH, 2011 WL

3474415 (M.D. Ala. Aug. 9, 2011) (adopting a report and recommendation regarding the Alabama,

Florida, and Georgia statutes); *Frazier v. Colorado*, No. 08–cv–02427–CMA, 2010 WL 2844080

(D. Colo. July 16, 2010) (Colorado statute); *Coleman v. Arpaio*, No. 09-9308, 2010 WL 1707031

(D.N.J. Apr. 27, 2010) (New Jersey statute); *Cravener v. Cameron*, No. 2:08–cv–1568, 2010 WL

235119 (W.D. Pa. Jan. 15, 2010) (Pennsylvania statute); *Hansen v. Marr*, 594 F. Supp. 2d 1097 (D.

Neb. 2009) (Nebraska statute).

In *Leslie*, the Sixth Circuit considered an Ohio statute which required the petitioner

to register with a local state official and provide certain personal information, including a home

address, the name and address of the petitioner's employer, and a photograph. *Leslie*, 296 F.3d at

521.  The petitioner also was required to provide the license plate number for any vehicles owned

or registered by him, and to verify his home address every 90 days, for the remainder of his life.  *Id.*

Failure to comply with the statute's requirements could result in felony charges.  *Id.*  In addition, the

statute provided that members of the petitioner's community would be notified of petitioner's name,

address, and prior convictions.  *Id.*

Following the Ninth Circuit's analysis in *McNab*, *Henry*, and *Williamson*, the court

in *Leslie* noted that "federal court 'precedents that have found a restraint on liberty rely heavily on

the notion of a physical sense of liberty-that is, whether the legal disability in question somehow

limits the putative habeas petitioner's movement.'"  *Leslie*, 296 F.3d at 522 (quoting *Williamson*,

151 F.3d at 1183).  According to the court, the requirements in Ohio's statute placed no significant

constraints on the offender's movement because they applied to him whether or not he moved, and

his ability to move was not conditioned on approval by a government official.  *Id.*  Moreover, unlike

the conditions of parole, the statute did not condition the petitioner's continued freedom upon his

ability to remain employed, nor did it prohibit him from engaging in any legal activities.  *Id.*  Finally,

the court noted that the Ohio Supreme Court considers the statute to be "remedial . . . in nature . . .

a form of civil regulation," which suggested that the statute's "classification, registration, and

community notification provisions are more analogous to collateral consequences such as the loss

of the right to vote than to severe restraints on freedom of movement such as parole." *Id.* at 523.

The apparent consensus of the federal courts that federal habeas relief is not available

to individuals subject to registration and notification requirements in state sex-offender laws readily

extends to SORNA. Like the Ohio statute at issue in *Leslie*, SORNA does not limit where Petitioner

may move, it does not condition his continued freedom on remaining employed, and it does not

prohibit him from engaging in any legal activities. *Cf. Leslie*, 296 F.3d at 522. Indeed, the Sixth

Circuit recently determined that SORNA does not impose an "affirmative disability or restraint" on

those required to register because it does not "physically restrain[]" them, or "directly restrict their

mobility, employment, or how they spend their time." *United States v. Shannon*, No. 11-3582, 2013

WL 141779, at *4 (6th Cir. Jan. 14, 2013) (unpublished) (rejecting an *ex post facto* challenge to

SORNA).

In addition, the Sixth Circuit has held that SORNA is more akin to a "civil regulatory

scheme" than a punishment. *See id*. at *5; *see also United States v. Kebodeaux*, 687 F.3d 232, 238

n.17 (5th Cir. 2012) ("Every circuit, including ours, has held that, unlike probation or supervised

release, SORNA's registration requirements are civil regulations whose purpose is not to punish for

crimes."). That being the case, SORNA is more analogous to a collateral consequence of conviction

than a severe restraint on liberty like parole. *Cf. Leslie*, 296 F.3d at 523. For the foregoing reasons,

therefore, the Court concludes that Petitioner is not "in custody" under SORNA, and as such, the

Court lacks jurisdiction under 28 U.S.C. § 2241 to consider Petitioner's challenge to it.

Even if the Court had jurisdiction to consider Petitioner's claims regarding SORNA,

they would be subject to dismissal because they are without merit.  On several occasions, the Sixth

Circuit has held that SORNA does not violate the Ex Post Facto Clause because it is not punitive in

purpose or effect.  *See United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012) (noting the

"unanimous consensus among the circuits" that SORNA does not violate the Ex Post Facto Clause);

*Shannon*, 2013 WL 141779, at *5; *United States v. Walker*, 450 F. App'x 464, 468 (6th Cir. 2011)

(examining SORNA's lifetime registration requirement).

The Sixth Circuit has also rejected claims that SORNA coerces states in violation of

the Tenth Amendment, *United States v. Stock*, 685 F.3d 621, 626 (6th Cir. 2012); *Felts*, 674 F.3d

at 607-08, exceeds Congress' power to regulate state activity, *see United States v. Coleman*, 675 F.3d

615, 620-21 (6th Cir. 2012) (holding that SORNA is valid under the Commerce Clause), or

impermissibly delegates authority to the Attorney General to determine its retroactive applicability,

*United States v. Stevenson*, 676 F.3d 557, 563 n.3 (6th Cir. 2012).

Petitioner's other claims regarding SORNA have been rejected by the Sixth Circuit

in connection with challenges to similar state laws.  Plaintiff contends that SORNA violates the

Equal Protection Clause because it treats sex offenders differently from individuals convicted of

other crimes, but that claim is without merit in light of *Does v. Munoz*, 507 F.3d 961 (6th Cir. 2007)

(examining SORA), and *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999) (examining Tennessee's

sex-offender registration statute).

In *Cutshall*, the court held that sex offenders are not a suspect class, and treating them

differently from other offenders is not irrational because they "pose a particular threat of

reoffending[.]" *Cutshall*, 193 F.3d at 482-83.  In *Munoz*, the court held that SORA's registration and

notification requirements do not implicate a fundamental right, and the state has a "rational basis for treating sex offenders differently from other offenders by requiring them to register." *Munoz*, 507 F.3d at 965-66.  If SORA's registration and notification requirements do not implicate a fundamental right, then the same can be said of the same type of requirements in SORNA.  *See United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (holding that SORNA does not implicate a fundamental right, citing *Munoz*).  Moreover, if the State of Michigan can treat sex offenders differently from other offenders by requiring them to register, then the same can be said of the federal government.

Finally, Petitioner contends that SORNA violates his right to due process because it was not in effect when his crimes were committed.  The Sixth Circuit rejected a *substantive* due process challenge to SORA because its registration and notification provisions do not implicate a fundamental right protected by substantive due process.  *See Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007); *accord Munoz*, 507 F.3d at 965.  That conclusion also applies to SORNA.  *See Juvenile Male*, 670 F.3d at 1012.

The Sixth Circuit has also stated that a *procedural* due process challenge to SORA is "foreclosed" by the Supreme Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), which held that "procedural due process does not entitle an individual convicted of a sex offense to a hearing to determine whether he or she is sufficiently dangerous to be included in the state's convicted sex-offender registry where the statute requires the registration of all sex offenders," dangerous or not.  *Mich. Dep't of State Police*, 490 F.3d at 502.  Like SORA, SORNA's requirements are triggered solely by Petitioner's prior conviction of a sex offense; they do not depend

upon a finding of dangerousness.  Thus, Petitioner's procedural due process challenge to SORNA is also without merit.

In short, the United States must be dismissed as a Respondent because the Court lacks jurisdiction to consider Petitioner's challenge to SORNA.  That statute does not render Petitioner "in custody" under 28 U.S.C. § 2241, and even if it did, Petitioner's claims regarding SORNA are meritless.

II.     State of Michigan (SORA)

Whether the Court has jurisdiction under § 2241 to consider a challenge to SORA presents a closer question because SORA's work, residence, and loitering restrictions restrain Petitioner's physical movement and restrict his activities in ways that SORNA does not.  No court, it appears, has squarely considered whether work and residence restrictions like those in Mich. Comp. Laws §§ 28.733-28.735 are sufficient to render an individual "in custody" for purposes of federal habeas corpus.  *Cf. Wilson v. Flaherty*, 689 F.3d 332, 348 n.8 (4th Cir. 2012) (Wynn, J., dissenting) (arguing that the majority should have considered municipal regulations restricting where a sex offender may live or move in its analysis of whether the petitioner satisfied the custody requirement of § 2254). However, even if the Court has jurisdiction to consider Petitioner's claims, they are subject to dismissal for lack of exhaustion.

As a general rule, in the absence of "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent," *Bowen v. Johnston*, 306 U.S. 19, 27 (1939), courts "require[] exhaustion of alternative remedies before a prisoner can seek federal habeas relief." *Boumediene v. Bush*, 553 U.S. 723, 793 (2008).  As the Supreme Court has explained:

Habeas corpus is "governed by equitable principles." *Fay v. Noia*, 372 U.S. 391, 438 (1963). We have therefore recognized that ["prudential concerns," *Withrow v. Williams*, 507 U.S. 680, 686 (1993), such as comity and the orderly administration of criminal justice,] may "require a federal court to forgo the exercise of its habeas corpus power," *Francis v. Henderson*, 425 U.S. 536, 539 (1976).

The principle that a habeas court is "not bound in every case" to issue the writ, *Ex parte Royall*, 117 U.S. 241, 251 (1886), follows from the precatory language of the habeas statute, and from its common-law origins. The habeas statute provides only that a writ of habeas corpus "may be granted," § 2241(a) (emphasis added), and directs federal courts to "dispose of [habeas petitions] as law and justice require," § 2243. *See Danforth v. Minnesota*, 552 U.S. 264, 278 (2008). . . . The question, therefore, even where a habeas court has the power to issue the writ, is "whether this be a case in which [that power] ought to be exercised." *Ex parte Watkins*, 3 Pet. 193, 201, 7 L.Ed. 650 (1830) (Marshall, C. J.).

*Munaf v. Geren*, 553 U.S. 674, 693 (2008) (parallel citations omitted).

With regard to habeas petitions filed under the general grant of authority in 28 U.S.C. § 2241 (as opposed to 28 U.S.C. § 2254, which only applies to claims seeking relief from custody pursuant to the judgment of a state court), there is no express statutory requirement that the petitioner exhaust state court remedies prior to asserting his claims in federal court. Nevertheless, the Supreme Court has indicated that exhaustion is required where, as here, the petition challenges a state-imposed restraint. *See Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 489-91 (1973) (citing cases).

Exhaustion in this context requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Picard v. Connor*, 404 U.S. 270, 275-77 (1971), *cited in Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the

-14-

state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987). Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (citing *Darr v. Burford*, 339 U.S. 200, 218-19 (1950)). Petitioner has not satisfied his burden. He alleges no facts indicating that he has presented any of his claims in state court.

Of course, exhaustion is not an issue if state-court remedies are not available to Petitioner. In this case, however, several remedies may be available. First, Michigan law allows an individual subject to SORA to file a petition to discontinue registration in the trial court in which the individual was convicted. Mich. Comp. Laws § 28.728c(4). The court may grant the petition to a "tier III" offender only if certain conditions in subsections (13), (14) or (15) are met. *See* Mich. Comp. Laws § 28.728c(2)-(3). Petitioner may not be able to satisfy the requisite conditions; however, Michigan courts have, on at least one occasion, considered *constitutional* challenges to SORA that were first raised in a petition under § 28.728c, even though the petitioner was ineligible for relief under that section. *See In re TD*, 823 N.W.2d 101, 105 (Mich. Ct. App. 2011) ("The trial court recognized that, under the statute, it did not have discretion to grant TD's request. However, TD also challenged the constitutionality of the SORA's registration requirements, and the trial court agreed that the statute was unconstitutional as applied to TD."), *vacated on other grounds*, 821 N.W.2d 569 (Mich. 2012). If it is uncertain whether the Michigan courts will consider the petitioner's claims on the merits, this Court will presume that such relief is available. *Hannah v.*

-15-

*Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995); *Brewer v. Dahlberg*, 942 F.2d 328, 340 (6th Cir. 1991).

Second, Petitioner may be able to seek relief via a petition for habeas corpus under Mich. Comp. Laws § 600.4301 *et seq.*, which permits "[a]n action for habeas corpus to inquire into the cause of detention . . . by or on the behalf of any person restrained of his liberty within this state under any pretense whatsoever, except as specified in section 4310."[8]  Mich. Comp. Laws § 600.4307.  Indeed, Petitioner himself asserts that he has a right under Michigan law (specifically, the Michigan constitution) to pursue a writ of habeas corpus.  (*See* Pet., docket #1, Page ID#1.) Although the denial of such a writ is not appealable by right, the petition may be renewed by filing an original complaint for writ of habeas corpus with the Michigan Court of Appeals.  *Triplett v. Deputy Warden*, 371 N.W.2d 862, 865 (Mich. Ct. App. 1985).  Denial of such a complaint by the Michigan Court of Appeals is subject to review by the Michigan Supreme Court.  *See* Mich. Ct. R. 7.301.

To be eligible for state habeas relief, Petitioner must be able to satisfy the Michigan-law counterpart to the "custody" requirement in § 2241, but the Michigan Court of Appeals has made clear that "relief available under a writ of habeas corpus in Michigan Courts is not more restrictive than that which the United States Supreme Court has deemed available under Federal writs of habeas corpus."  *Cross v. Dep't of Corr.*, 303 N.W.2d 218, 221 (Mich. Ct. App. 1981) (citing *Billingsley v. Birzgalis*, 174 N.W.2d 17 (Mich. Ct. App. 1969)).  Thus, if Petitioner claims that the restraints imposed on him under SORA are sufficient to make him eligible for federal habeas relief, then by

---

[8]At this stage, it appears that none of the exceptions in Mich. Comp. Laws § 600.4310, which generally prevent petitioners from collaterally attacking the merits of their conviction and sentence, *see Cross v. Dep't of Corr.*, 303 N.W.2d 218, 220-21 (Mich. Ct. App. 1981), are applicable to Petitioner, because he does not challenge his conviction or sentence.

extension, they must be sufficient for bringing a state habeas petition. *See Billingsley*, 174 N.W.2d at 18 ("Historically, the function of the great [writ] of habeas corpus has been to test the legality of the detention of any person restrained of his liberty. *Jones v. Cunningham*[, 371 U.S. 236 (1963)] (construing Federal habeas corpus act, [28 U.S.C. §] 2241). We do not find Michigan law to be otherwise.").

Finally, Petitioner may be able to assert his claims in state court in a civil-rights action.[9] Therefore, the Court concludes that Petitioner has at least one available state-court remedy. Consequently, his challenge to SORA will be dismissed without prejudice for lack of exhaustion.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's action pursuant to Rule 4. Respondent United States will be dismissed with prejudice for lack of jurisdiction, and Respondent State of Michigan will be dismissed without prejudice for lack of exhaustion.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus

---

[9]To the extent that Petitioner can also pursue a civil-rights action in this Court, the Court declines to recharacterize his petition as such an action. *See Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) (noting that liberal construction of a *pro se* habeas petition "does not require the court to conjure allegations" or to "prosecute a § 1983 suit" on a litigant's behalf).

indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has

already determined that the action is so lacking in merit that service is not warranted.  *See Love v.*

*Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss

under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring

reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of*

*Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a

certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d

1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of

a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme

Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner

must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating

that . . . jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  The Court finds that reasonable

jurists could not conclude that this Court's dismissal of Petitioner's claims against Respondent

United States for lack of jurisdiction (or, in the alternative, for lack of merit) was debatable or wrong.

This Court denied Petitioner's claims against Respondent State of Michigan on the

procedural ground of lack of exhaustion.  Under *Slack*, when a habeas petition is denied on

procedural grounds, a certificate of appealability may issue only "when the [petitioner] shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.  Both showings must be made to warrant the grant of a certificate.  *Id.*  The Court finds that reasonable jurists could not debate that this Court correctly dismissed the petition on the procedural ground of lack of exhaustion.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Id.*  Therefore, the Court denies Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Date:   February 5, 2013                                    /s/ Robert Holmes Bell
                                                            ROBERT HOLMES BELL
                                                            UNITED   STATES   DISTRICT   JUDGE